UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LAURENE M. REICHARDT,

                        Plaintiff,

v.                                              3:14-CV-1304
                                                (GTS/WBC)
COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.

_____

APPEARANCES:                                    OF COUNSEL:

HINMAN, HOWARD & KATTELL, LLP                   BRENT M. WHITING, ESQ.
  Counsel for Plaintiff
P.O. Box 5250
80 Exchange St.
Binghamton, NY 13902-5250

U.S. SOCIAL SECURITY ADMIN.                     ANDREEA LECHLEITNER, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II        JEREMY A. LINDEN, ESQ.
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## REPORT and RECOMMENDATION

        This matter was referred for report and recommendation by the Honorable Judge

Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local

Rule 72.3(d).  (Dkt. No. 13.)  This case has proceeded in accordance with General

Order 18.

        Currently before the Court, in this Social Security action filed by Laurene M.

Reichardt ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the

Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings.  (Dkt. Nos. 7, 11.)  For the reasons set forth below, it is recommended that Plaintiff's motion be denied and Defendant's motion be granted.

## I.  RELEVANT BACKGROUND

### A.  Factual Background

Plaintiff was born on December 4, 1954.  (T. 130.)  She holds a Bachelor's degree in social work.  (T. 45, 166.)  Generally, Plaintiff's alleged disability consists of depression/anxiety, adjustment disorder, osteoarthritis, fibromyalgia, reflex sympathetic dystrophy ("RSD"), asthma, Baker's cyst, pinched nerve, and carpal tunnel syndrome. (T. 165.)  Her alleged disability onset date is April 11, 2011.  (T. 64.)  Her date last insured is December 31, 2015.  (T. 71.)  She previously worked as a disability programs manager.  (T. 166.)

### B.  Procedural History

On April 5, 2011, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II, she also filed a Title II application for disabled widow's benefits. (T. 64.)  On November 1, 2012, Plaintiff applied for Supplemental Security Income ("SSI") under Title XVI, of the Social Security Act.  (T. 148.)  Plaintiff's applications were initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ").  On January 23, 2013, Plaintiff appeared before the ALJ, Robert E. Gale.  (T. 36-63.)  On March 7, 2013, ALJ Gale issued a written decision finding Plaintiff not disabled under the Social Security Act.  (T. 8-35.)  On August 25, 2014, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the

final decision of the Commissioner.  (T. 1-6.)  Thereafter, Plaintiff timely sought judicial review in this Court.

### C.    The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law.  (T. 14-35.)  First, the ALJ found that Plaintiff met the insured status requirements through April 30, 2011 and Plaintiff had not engaged in substantial gainful activity since April 11, 2011.  (T. 14.)[1]  The ALJ also determined that Plaintiff's prescribed period for widow benefits ends on November 30, 2014.  (*Id.*)  Second, the ALJ found that Plaintiff had the severe impairments of fibromyalgia; osteoarthritis of fingers, hands, and knees; right rotator cuff tendinitis/bursitis; Baker's cyst of left knee; cervical and lumber spine disorders; obesity; mild osteopenia of her lumber spine; chronic pain syndrome; history of bilateral carpal tunnel release procedures in the 1990's; right knee arthroscopy in 2003; and left knee arthroscopy in 2010.  (T. 14-15.)  The ALJ determined that Plaintiff's heel spurs, reflex sympathetic disorder ("RSD"), asthma, gout, acid reflux, bladder control issues, irritable bowel syndrome, and mental impairments were non-severe impairments.  (T. 16-17.)  Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1.  (T. 21-22.)  Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work.  (T. 22.)[2]  Specifically, the ALJ determined that Plaintiff could lift, carry, push or

---

[1]     Plaintiff's date last insured is December 31, 2015 and the record does not indicate that this was amended during the application or hearing process.  (T. 71.)  The ALJ's determination that Plaintiff's date last insured is April 11, 2011, appears to be a typo.  Neither party raises this issue in their briefs.

[2]     Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in

pull twenty pounds occasionally and ten pounds frequently. (*Id.*) The ALJ determined

that Plaintiff could stand or walk, in combination, for two hours total in an eight hour

workday with normal breaks. (*Id.*) The ALJ determined that Plaintiff could sit for six

hours in an eight hour workday. (*Id.*) The ALJ determined Plaintiff could frequently

climb, balance, stoop, kneel, crouch, crawl, or reach overhead and had no limitation in

reaching in all other directions, handling, fingering, or feeling. (*Id.*) Fifth, the ALJ

determined that Plaintiff was capable of performing her past relevant work as a disability

programs manager. (T. 29-30.)

## II.    THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.    Plaintiff's Arguments

Plaintiff makes five separate arguments in support of her motion for judgment on

the pleadings. First, Plaintiff argues the ALJ erred in his step two determination that

Plaintiff's anxiety and depression were non-severe impairments. (Dkt. No. 7 at 8-9 [Pl.'s

Mem. of Law].)[3] Second, Plaintiff argues the ALJ erred in his step two determination

that Plaintiff's irritable bowel and bladder control problem, hypothyroidism, hypertension,

high cholesterol, high triglycerides, heart palpitations, asthma, allergies, acid reflux,

---

this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b), 416.967(b).

Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. §§ 404.1567(a), 416.967(a).

[3]    The pages of Plaintiff's brief are not numbered; therefore, this Report and Recommendation will refer to the page numbers assigned to the brief by the court's electronic filing system ("CM/ECF").

GERD, gout, and RSD were non-severe impairments. (*Id.* at 9-10.) Third, Plaintiff argues the ALJ failed to properly follow the treating physician rule. (*Id.* at 10-11.) Fourth, Plaintiff argues the ALJ reached an improper determination regarding the RFC. (*Id.* at 11.) Fifth, and lastly, Plaintiff argues the ALJ failed to sustain his burden at step five of the sequential evaluation process by failing to utilize the services of a vocational expert ("VE"). (*Id.* at 12.)

**B.    Defendant's Arguments**

In response, Defendant makes three arguments. First, Defendant argues the ALJ properly found that Plaintiff did not have additional severe impairments. (Dkt. No. 11 at 5-13 [Def.'s Mem. of Law].) Second, Defendant argues the ALJ properly evaluated the medical evidence and reasonably found that Plaintiff retained an RFC for a range of light to sedentary work, with no mental limitations. (*Id.* at 13-17.) Third, and lastly, Defendant argues the ALJ was not required to make a finding at step five. (*Id.* at 17-19.)

**III.    RELEVANT LEGAL STANDARD**

**A.    Standard of Review**

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard

to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.      Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

## IV.  ANALYSIS

### A.    The ALJ's Step Two Determination

At step two of the sequential evaluation process, the ALJ must determine whether Plaintiff had a severe impairment, a combination of impairments, which significantly limited her physical or mental ability to do basic work activities. *See* C.F.R. §§ 404.1520(c), 416.920(c). Plaintiff bears the burden of presenting evidence establishing severity. *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012) (citing

*Miller v. Comm'r of Social Sec.,* No. 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008); *see also* 20 C.F.R. §§ 404.1512(a), 416.912(a).

Although the Second Circuit has held that this step is limited to "screen[ing] out de minimis claims," *Dixon v. Shalala,* 54 F.3d 1019, 1030 (2d Cir.1995), the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render a condition "severe." *Coleman v. Shalala,* 895 F.Supp. 50, 53 (S.D.N.Y. 1995). Indeed, a "finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" *Rosario v. Apfel,* No. 97-CV-5759, 1999 WL 294727, at *5 (E.D.N.Y. March 19,1999) (quoting *Bowen v. Yuckert,* 482 U.S. 137, 154 n.12, 107 S.Ct. 2287 (1987)).

In addition, "[w]here an ALJ has omitted an impairment from step two of the sequential analysis, other courts have declined to remand if the ALJ clearly considered the effects of the impairment in the remainder of his analysis." *Chavis v. Astrue*, No. 07-CV-0018, 2010 WL 624039, at *12 (N.D.N.Y. Feb.18, 2010); *Lasiege v. Colvin*, No. 12-CV-01398, 2014 WL 1269380, at *10-11 (N.D.N.Y. Mar. 25, 2014); *Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (finding the alleged step two error harmless because the ALJ considered the plaintiff's impairments during subsequent steps); *see also* 20 C.F.R. §§ 404.1523, 416.923 (stating that the ALJ is required to consider the "combined effect of all of [plaintiff's] impairments without regard to whether any such impairment, if considered separately would be of sufficient severity"). It has been well established that "[b]ecause step two merely serves as a filter to screen out *de minimis* disability claims, a finding of any severe impairment, whether attributable to a

single condition or a combination of conditions, is enough to satisfy its requirements."
*Kessler v. Colvin*, 48 F.Supp.3d 578, 593 (S.D.N.Y. 2014) (*citing Fortier v. Astrue*, No.
10-CV-01688, 2012 WL 3727178, at *9 (D. Conn. May 11, 2012)).

For the reasons stated herein, and in Defendant's brief, it is recommended that
the ALJ's step two determination be upheld. The ALJ properly assessed, and relied on,
the medical opinion evidence in the record and Plaintiff's testimony in making her step
two determination that Plaintiff's additional physical and mental impairments were non-
severe. In the alternative, any error the ALJ may have made at step two was harmless
because the ALJ found severe impairments at step two, he thoroughly discussed
Plaintiff's impairments elsewhere in his decision, and he clearly considered the effects
of Plaintiff's impairments in his RFC analysis and determination.

### i.) Plaintiff's Additional Physical Impairments

The ALJ determined at step two that many of Plaintiff's medically determinable
physical impairments were non-severe. (T. 15-17.) Plaintiff argues the ALJ erred in this
determination because the record contains diagnosis of additional physical impairments
and Plaintiff takes medication for these additional impairments. (Dkt. No. 7 at 9-10 [Pl.'s
Mem. of Law].) The "mere presence of a disease or impairment, or establishing that a
person has been diagnosed or treated for a disease or impairment" is not, itself,
sufficient to deem a condition severe. *McConnell v. Astrue,* 2008 WL 833968, at *2
(N.D.N.Y.2008) (citing *Coleman,* 895 F.Supp. at 53)). Therefore, Plaintiff's argument
that the ALJ failed to find Plaintiff's additional physical impairments severe because the
record contained a diagnosis, or notation of medication, must fail.

Further, even if the ALJ erred in concluding that Plaintiff's additional physical impairments were non-severe, any error was harmless. The ALJ thoroughly discussed all of Plaintiff's physical impairments, severe and non-severe, at step two and in his RFC analysis. In addition, the ALJ thoroughly discussed the effects of all of Plaintiff's medications in his determination. (T. 15-17.) Therefore, the ALJ did not err in his determination that Plaintiff's physical impairments of heel spurs, RSD, irritable bowel, lack of bladder control, hypothyroidism, hypertension, high cholesterol, high triglycerides, heart palpitations, asthma, allergies, acid reflux, GERD, and gout were non-severe impairments, because the record failed to establish that these impairments caused more than minimal limitations in functioning. Further, any error would be harmless because the ALJ found sever impairments at step two and the ALJ took into consideration all of Plaintiff's impairments in formulating his RFC determination.

### ii.)    Plaintiff's Mental Impairments

At step two, the ALJ determined that Plaintiff's depression and anxiety were non-severe impairments. (T. 17-21.) The ALJ concluded that although Plaintiff required medication and outpatient treatment, the medical evidence in the record indicated that her mental condition was "situational and vastly improved within a brief period of use of medication and appropriate medical treatment" and therefore did not constitute a severe impairment. (T. 18.) In making his determination the ALJ relied on the medical opinion of the non-examining State agency medical consultant, E. Kamin, Ph.D., Plaintiff's mental health provider, Debra Kman, LCSW and consultative examiner, Mary Ann Moore, Psy.D. (T. 19-20.)

Plaintiff argues the ALJ erred in his determination that Plaintiff's mental impairments were non-severe because the medical opinions of Dr. Moore and Ms.

Kman support a finding of a severe impairment. (Dkt. No. 7 at 8-9 [Pl.'s Mem. of Law].) Defendant counters that the ALJ properly determined Plaintiff did not have a severe mental impairment because the ALJ relied on the opinion of Dr. Kamin, treatment notations which indicated normal mental status examinations, and the ALJ evaluated the four broad functional areas. (Dkt. No. 11 at 9-11 [Def.'s Mem. of Law].)

The ALJ's evaluation of Plaintiff's mental impairments must reflect his application of the "special technique" set out in 20 C.F.R. §§ 404.1520a, 416.920a, which necessitates his consideration of "four broad functional areas" that include: "[a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). The first three areas are rated on a five-point scale: "[n]one, mild, moderate, marked, and extreme." *Id.* at §§ 404.1520a(c)(4), 416.920a(c)(4). "[I]f the degree of limitation in each of the first three areas is rated 'mild' or better, and no episodes of decompensation are identified, then the [ALJ] generally will conclude that the claimant's mental impairment is not 'severe.' " *Kohler v. Astrue,* 546 F.3d 260, 266 (2d Cir.2008) (quoting 20 C.F.R. § 404.1520a(d)(1)).

In making this step two determination, the ALJ conducted an analysis of the four broad functional areas set out in Listing 12.00C. *See* 20 C.F.R., Part 404, Subpart P, App. 1. The ALJ concluded Plaintiff had no limitations in the functional area of activities of daily living. (T. 18.) The ALJ concluded that in the area of social functioning Plaintiff's difficulties occurred in "very limited circumstances." (T. 19.) The ALJ concluded that Plaintiff was able to maintain adequate attention, concentration, and memory. (*Id.*) The ALJ concluded Plaintiff had no episodes of decompensation. (T.

18.)  In reaching his conclusion, the ALJ relied on Plaintiff's testimony and medical opinion evidence in the record.  (T. 18-19.)  The evidence in outlined herein.

Dr. Moore examined Plaintiff on June 29, 2011.  (T. 230-235.)  Her mental status examination revealed that Plaintiff was cooperative and her manner of relating socially was adequate.  (T. 232.)  Dr. Moore observed that Plaintiff's hygiene was "fair," her eye contact was appropriate, her speech was intelligible and clear, her thought process was coherent and goal directed.  (*Id.*)  Dr. Moore further observed that Plaintiff's mood was euthymic, she was orientated, her attention and concentration were intact, and her memory skills were intact.  (*Id.*)

Based on her examination, Dr. Moore provided a medical source statement. Therein, she opined that Plaintiff could follow and understand simple directions and instructions, perform simple rote tasks under supervision, and perform simple tasks.  (T. 233.)  Dr. Moore opined that Plaintiff could learn simplistic and complex tasks.  (*Id.*) She opined Plaintiff "may have" some difficulty dealing with stress and did appear to be overwhelmed.  (*Id.*)  Dr. Moore opined Plaintiff was "exhibiting a great deal of life stressors at the current time."  (*Id.*)  She opined that Plaintiff's depression and anxiety "may cause some problems" with making appropriate work decisions and maintaining a regular schedule.  (*Id.*)  Dr. Moore recommended that Plaintiff receive job training.  (T. 234.)

On July 18, 2011, Dr. Kamin reviewed the medical evidence in the record and completed a psychiatric review technique form.  (T. 244-257.)  Dr. Kamin opined that based on the medical evidence in the record, Plaintiff's mental impairments were not severe.  (T. 244.)  He opined that Plaintiff had no limitations in her activities of daily

living; no limitations in her ability to maintain social functioning; and no limitations in her ability to maintain concentration, persistence, or pace. (T. 254.) In the consultant's notes section Dr. Kamin wrote "see 3863," referring to the form DSS-3863 "New York State Office of Temporary and Disability Assistance Division of Disability Determinations: Non-Severe Impairment Checklist." (T. 172.) The DSS-3863 form was completed on July 14, 2011 by disability analyst, S. Marinaro. (*Id.*) Analyst Marinaro stated that Plaintiff's depression and anxiety were due to the recent death of her spouse, she had no history of psychiatric treatment, she took medication prescribed by her primary care physician, and the record indicated that her symptoms did not cause more than a slight abnormality in functioning. (*Id.*)

Plaintiff received mental health counseling from Ms. Kman in December of 2012. (T. 316-320.) Ms. Kman completed a Medical Assessment of Ability to Do Work-Related Activities form on December 28, 2012. (T. 313-315.) Therein, she opined Plaintiff's ability to follow work rules, use judgment, and interact with supervisors was "fair" (limited but satisfactory). (T. 313.) She opined Plaintiff's ability to deal with work stress was "seriously limited" and her ability to maintain attention/concentration was "good" to "fair." (T. 314.) Ms. Kman wrote that Plaintiff's "anxiety interacts [with] and affects her work performance at times." (*Id.*) Ms. Kman opined Plaintiff's ability to understand, remember and carry out complex, as well as detailed but not complex, job instructions was "seriously limited." (*Id.*) She opined Plaintiff's ability to understand, remember, and carry our simple job instructions was "fair." (*Id.*) Ms. Kman wrote that Plaintiff's memory appeared "to have been impacted by depression/anxiety, [Plaintiff] becomes easily overwhelmed [with] task organization." (*Id.*)

Ms. Kman's treatment notations consist of Plaintiff's reported mental health history, a history of her marriages and family structure, and goals. (T. 316-318.) Treatment notations indicated that Ms. Kman met with Plaintiff twice in December of 2012. (*Id.*) Plaintiff's goals included financial improvement, "down time," and to stay active in her historical societies. (T. 318.) Ms. Kman's treatment notations do not contain mental status examinations or objective observations.

In evaluating the medical opinion evidence in the record, the ALJ afforded Dr. Kamin's opinion "great weight" reasoning it was based on a comprehensive review of the medical evidence. (T. 18.) The ALJ afforded Dr. Moore's opinion "some weight," but "less weight" than Dr. Kamin's opinion. (T. 20.) The ALJ reasoned that Dr. Moore's opinion was not fully supported by objective clinical findings from Plaintiff's treating sources and not supported by her own mental status examination. (*Id.*) The ALJ did not afford Ms. Kman's opinion specific weight; however, the ALJ provided an analysis of her opinion. (*Id.*) The ALJ properly concluded that Ms. Kman was not an acceptable medical source under the Regulations, and therefore, her opinion was not entitled to controlling weight. (*Id.*); *see* 20 C.F.R. §§ 404.1513, 416.913. The ALJ further reasoned that Dr. Kamin's opinion was entitled to greater weight than Ms. Kman's opinion because Dr. Kamin's opinion was "more consistent" with the record, including Plaintiff's ongoing work activity and her activities of daily living. (*Id.*)

The ALJ properly reasoned that Dr. Moore's opinion that Plaintiff may have difficulty dealing with stress was not supported by her own benign clinical observations of Plaintiff. (T. 20); *Stottlar v. Colvin*, No. 5:13-CV-00047, 2014 WL 3956628, at *16 (N.D.N.Y. Aug. 13, 2014) ("The ALJ's determination to give [the consultative examiner's]

opinion little weight was proper because the opinion was based entirely on Plaintiff's subjective statements and was inconsistent with the doctor's benign examination findings.")  Dr. Moore opined that Plaintiff "may have difficulty dealing with stress" and her mental impairments "may cause some problems with making appropriate work decisions, maintaining a regular work schedule." (T. 233.)

Ms. Kman opined that Plaintiff's ability to deal with stress was "seriously limited (ability to function in this area is seriously limited, but not precluded)" (T. 313-314), the ALJ properly afforded her opinion lesser weight than other opinions in the record, including Dr. Kamin's opinion.  Ms. Kman was not an acceptable medical source under the Regulations.  20 C.F.R. §§ 404.1513(a), 416.913(a).  Her opinion was not supported by her treatment notations, which did not contain supporting objective observations, and her opinion was inconsistent with other benign mental status examinations in the record.

Although a social worker may be the main mental health treatment provider, a social worker is not a "treating source" under the applicable Social Security Regulations. A "treating source" is defined as a plaintiff's "own physician, psychologist, or other acceptable medical source who provides [plaintiff], or has provided [plaintiff], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [plaintiff]."  20 C.F.R. §§ 404.1502, 416.902.  There are five categories of "acceptable medical sources."  *Id.* at §§ 404.1513(a), 416.913(a).  Social workers are not included within those categories.  Social workers are listed among the "other sources," whose opinion may be considered as to the severity of a plaintiff's impairment and ability to work, but their conclusions are not entitled to any special weight.  *Id.* at §§ 404.1513(d)(3), 416.913(d)(3).  Courts have held, however, that an ALJ is not required

to weigh the assessment of an "other source" at all. *Ross v. Colvin*, No. 6:13-CV-00755 NAM, 2014 WL 5410327, at *16 (N.D.N.Y. Oct. 21, 2014); *see Bulavinetz v. Astrue,* 663 F.Supp.2d 208, 212 (W.D.N.Y.2009); *Esteves v. Barnhart,* 492 F.Supp.2d 275, 281-82 (W.D.N.Y.2007) (ALJ is under no obligation to weigh a mental health counselor's assessment in determining whether a claimant is disabled). In addition, although Ms. Kman treated Plaintiff, her treatment was extremely brief and most likely not of the length needed to establish a treating relationship with Plaintiff.

The ALJ also properly reasoned that mental status examinations did not support Ms. Kman's, or Dr. Moore's, opinions. (T. 18, 20.) Mental status examinations performed on May, August, and September of 2011 were all within normal limits. (T. 274, 278, 280.) Plaintiff received mental health counseling from Chenango County Mental Health in March and April of 2012. (T. 264-268.) A mental status examination performed on April 21, 2012 was within normal limits. (T. 265.) Therefore, the ALJ properly reasoned that additional mental limitations opined by Dr. Moore and Ms. Kman were not supported by objective mental status examinations which were all normal. The record was otherwise devoid of mental health treatment notations which would indicate greater functional limitations.

Therefore, the ALJ properly weighed the medical evidence in the record in making his determination that Plaintiff's mental impairments were non-severe. Substantial evidence supported the ALJ's determination that Plaintiff did not have limitations in the four broad functioning areas, and therefore, her impairment was non-severe.

Even had the ALJ adopted Dr. Moore's and Ms. Kman limitations regarding Plaintiff's difficulty dealing with stress, those limitations would not preclude Plaintiff from performing the basic mental demands of unskilled work or the mental demands of Plaintiff's work as a disability program manager. Basic mental work activities include the ability to: understand, carry out, and remember simple instructions; use judgment; respond appropriately to supervision, co-workers and usual work situations; and deal with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b)(3)-(6), 416.921(b)(3)-(6), *see* also SSR 85-15 (S.S.A. 1985). A finding that Plaintiff was "mildly" or "moderately" impaired in functional areas would not preclude Plaintiff's ability to perform the basic mental demands of unskilled work. *See Sipe v. Asture*, 873 F.Supp.2d 471 (2012) (holding that plaintiff could perform unskilled work based on the testimony of plaintiff, as well as medical opinions of consultative examiner and non-examining state agency examiner who found mild and moderate limitations in all relevant areas); *see also Ellis v. Comm'r Soc. Sec.*, No. 11-CV-1205, 2012 WL 5464632 (N.D.N.Y. Sept. 7, 2012) ("Moderate limitations in a few of the categories do not rise to the level of substantial loss in the ability to perform the demands outlined in SSR 85-15.") Therefore, if Plaintiff's mental impairments did not cause more than minimal limitations in Plaintiff's ability to perform the basic mental work activities as outline in the Regulations, then Plaintiff's mental impairments were non-severe.

The ALJ reasoned that despite her mental impairments, based on Plaintiff's testimony, she was able to mentor a client with developmental disabilities, travel to and from the client's home, and take the client to appointments. (T. 25.) Plaintiff testified that in her current position she was able to provide mentoring and counseling to a

developmentally disabled client. (T. 47.) Plaintiff testified that she's had depression "for a long time," her depression "comes and goes," caused difficulty in concentration, and caused a "lack of interest." (T. 50.) She testified that she was still grieving the loss of her husband. (*Id.*) Plaintiff testified that her depression can cause the symptoms of her fibromyalgia pain to worsen. (*Id.*)

The ALJ did not err in his step two determination that Plaintiff's mental health impairments were non-severe. The ALJ properly assessed the medical opinion evidence in the record in reaching his conclusion that Plaintiff's mental health impairments did not cause more than minimal functional limitations. The ALJ also properly relied on Plaintiff's testimony in making his determination. In addition, any error the ALJ may have made at step two regarding Plaintiff's mental impairments was harmless because the ALJ thoroughly discussed Plaintiff's mental impairments at all steps of the sequential process. Therefore, for the reasons stated herein and further outlined in Defendant's brief, the ALJ did not err in his step two determination.

**B.      Medical Evidence in the Record and RFC Determination**

Plaintiff's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments, in making an RFC determination the ALJ must consider all of Plaintiff's impairments, including impairments that are non-severe. 20 C.F.R. §§ 404.1520(e), 404.1545, 416.920(e), 416.945. In formulating an RFC determination, the ALJ will base his determination on "all relevant evidence" in the record. *Id.* at §§ 404.1545(a), 416.945(a).

The relevant factors considered in determining what weight to afford an opinion include the length, nature and extent of the treatment relationship, relevant evidence which supports the opinion, the consistency of the opinion with the record as a whole, and the specialization (if any) of the opinion's source. 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

The opinion of a treating source will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

The following factors must be considered by the ALJ when deciding how much weight the opinion should receive, even if the treating source is not given controlling weight: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." 20 C.F.R. §§ 404.1527(c)(2)(i)-(iv), 416.927(c)(2)(i)-(iv). The ALJ is required to set forth his reasons for the weight he assigns to the treating physician's opinion. *Id.*, *see also* SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir.1998)).

It is well established that a treating physician's opinion as to the nature and severity of an impairment is given controlling weight. *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (per curiam). But a treating physician's opinion is not entitled to controlling weight when it is not supported by medically acceptable, clinical, and

laboratory diagnostic techniques or is inconsistent with other evidence in the record. *Greek,* 802 F.3d at 375.

Plaintiff argues the ALJ erred in his assessment of Plaintiff's treating providers, Dr. Oven, Dr. Njoku, and Dr. Vogel and improperly afforded more weight to the opinion of Dr. Kamin. (Dkt. No. 7 at 10-11 [Pl.'s Mem. of Law].) Defendant argues that none of the sources provided a medical opinion regarding Plaintiff's ability to function, either mentally or physically and therefore, "it is not clear what [P]laintiff believes the ALJ should have credited." (Dkt. No. 11 at 15 [Def.'s Mem. of Law].)

To be sure, Plaintiff does not cite to specific opinions in the record from Plaintiff's treating sources Drs. Oven, Njoku, or Vogel which she believes support a more restrictive RFC determination; and therefore, it is difficult to comprehend what error Plaintiff alleges the ALJ made. (Dkt. No. 7 at 11 [Pl.'s Mem. of Law].) Plaintiff appears to argue that the ALJ erred as a matter of law in providing more weight to Dr. Kamin's opinion over that of Plaintiff's treating providers. (*Id.*) However, an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. *See* 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(e), 416.912(b)(6), 416.913(c), and 416.927(e). The Regulations "recognize that the Commissioner's consultants are highly trained physicians with expertise in evaluation of medical issues in disability claims whose "opinions may constitute substantial evidence in support of residual functional capacity findings." *Lewis v. Colvin*, 122 F. Supp. 3d 1, at 7 (N.D.N.Y. 2015) (citing *Delgrosso v. Colvin,* 2015 WL 3915944, at *4 (N.D.N.Y. June 25, 2015), *adopting Report & Recommendation*, (rejecting similar "global objection

to reliance on nonexamining medical advisers' opinions" by same plaintiffs' counsel));
*see also Leach ex. Rel. Murray v. Barnhart,* No. 02-CCV-3561, 2004 WL 99935, at *9
(S.D.N.Y.Jan.22, 2004) ("State agency physicians are qualified as experts in the
evaluation of medical issues in disability claims. As such, their opinions may constitute
substantial evidence if they are consistent with the record as a whole.").  Therefore, the
ALJ did not commit legal error in affording Dr. Kamin's opinion more weight than the
opinions of Plaintiff's other providers.

Further, Plaintiff's argument could be read as contending that the ALJ erred in his
mental RFC assessment.  (Dkt. No. 7 at 11 [Pl.'s Mem. of Law].)  Plaintiff states that the
ALJ erred in relying on Dr. Kamin's opinion over the opinion of Ms. Kman.  (Dkt. No. 7 at
11 [Pl.'s Mem. of Law].)  As discussed herein, the ALJ did not err in his step two
evaluation of Plaintiff's mental impairments in which he relied primarily on the opinion of
Dr. Kamin and Plaintiff's testimony, nor did the ALJ err in his evaluation of Ms. Kman's
opinion.  The ALJ properly evaluated the very limited mental health treatment records
and treatment notations in making his step two determination and subsequent RFC
determination.  Substantial evidence in the record supported the ALJ's determination
that the record did not indicate that Plaintiff had more than minimal functional limitations
due to her mental impairments.  Any error the ALJ may have made at step two was
harmless because he proceeded with the sequential process and took Plaintiff's mental
impairments into consideration when formulating his RFC determination.  Even had the
ALJ specifically accounted for Plaintiff's difficulty dealing with stress, such limitation
would not preclude Plaintiff from performing her past relevant work, or in the alternative,
unskilled work.  Further, Drs. Oven, Njoku, and Vogel did not provide functional

limitations based on Plaintiff's mental impairments; therefore, these opinions did not contradict the findings of Dr. Kamin.

As stated herein, the ALJ properly afforded weight to the medical evidence in the record at step two and in making his RFC determination. The ALJ properly concluded that based on Plaintiff's testimony and normal mental status examinations, any limitations due to stress did not create additional functional limitations.

### C.    The ALJ's Step Four Determination

At step four of the five step sequential evaluation process for determining whether an individual is disabled, the ALJ must determine whether Plaintiff has the RFC to perform the requirements of her past relevant work. 20 CFR §§ 404.1520(f), 416.920(f). The term past relevant work is defined as "work that [Plaintiff] has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it. 20 CFR §§ 404.1560(b)(1), 416.960(b)(1). Plaintiff will be found not disabled if it is determined that she has the RFC to perform: "1. The actual functional demands and job duties of a particular past relevant job; or 2. The functional demands and job duties of the occupation as generally required by employers throughout the national economy." SSR 82-61. Here, the ALJ determined that Plaintiff was capable of performing her past relevant work. (T. 29-30.) Therefore the ALJ did not proceed to step five.

Plaintiff argues that had the ALJ properly assessed Plaintiff's additional physical and mental impairments he would have determined Plaintiff had a more restrictive RFC and therefore the sequential process would have continues to step five. (Dkt. No. 7 at 12 [Pl.'s Mem. of Law].)

First, for the reasons stated herein, the ALJ did not err in his step two or RFC determinations. Second, Plaintiff does not argue that the ALJ erred in his determination at step four that Plaintiff could perform her past relevant work based on his ultimate RFC determination. Therefore, the ALJ did not err in concluding at step four that Plaintiff could perform her past relevant work, because the ALJ did not err in formulating his RFC determination, the RFC determination was supported by substantial evidence in the record, and Plaintiff does not argue the ALJ erred in his step four determination based on his actual RFC determination.

**ACCORDINGLY**, based on the findings above, it is

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**, and the Plaintiff's complaint **DISMISSED.**

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: May 16, 2016

William B. Mitchell Carter
U.S. Magistrate Judge